# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

AMANDA KAISER,

                Plaintiff,

v.

ACCO MANAGEMENT COMPANY,
LLC,

                Defendant.

Case No. 23-CV-1539-JPS

**ORDER**

## 1.    INTRODUCTION

In November 2023, Plaintiff Amanda Kaiser ("Kaiser") sued Defendant ACCO Management Company, LLC ("ACCO") for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 1. After motion practice, *see* ECF Nos. 33 and 34, ACCO's counsel moved to withdraw in June 2025. ECF No. 36. The Court granted the motion to withdraw and ordered ACCO to obtain new counsel and have that counsel appear within sixty days. ECF No. 39 at 4 ("ACCO must find new counsel because it may not proceed pro se." (citing *1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015))). The Court also ordered ACCO's counsel to provide a copy of the order granting their withdrawal to their client. *Id.* The Court further noted that, "[i]f ACCO fail[ed] to find counsel, and thus no counsel appear[ed] on ACCO's behalf within 60 days from the date of th[e] Order, [Kaiser could] request entry of default against ACCO and then move for default judgment." *Id.* That order was entered on June 3, 2025, so ACCO needed to have its new counsel

appear by August 4, 2025, but to date, no counsel has appeared on ACCO's behalf.

On August 5, 2025, Kaiser requested, and the Clerk of Court entered, default against ACCO. ECF Nos. 40, 41; Aug. 5, 2025 docket entry. The Court thereafter ordered Kaiser to move for default judgment on or before September 18, 2025. Sept. 4, 2025 text order. On September 18 and 19, 2025, Kaiser filed a motion for default judgment along with supporting materials. ECF Nos. 43–46. The Court denied the motion without prejudice, as Kaiser had failed to meet the service requirements of Federal Rule of Civil Procedure 55(b)(2) and, more significantly, had failed to explain why the facts in her complaint entitled her to the relief sought. ECF No. 47.

Now before the Court is Kaiser's second motion for default judgment together with declarations. ECF Nos. 48–50. Kaiser served the moving papers on ACCO's registered agent by mail. ECF No. 50. ACCO has not filed any response in the time allotted under the local rules, nor has it otherwise appeared to defend against this action in over six months. *See* CIV. L.R. 7(b); FED. R. CIV. P. 5(b)(2)(C) (explaining proper forms of service). The Court therefore treats the motion as unopposed. *See* CIV. L.R. 7(b), (d).

For the reasons set forth herein, the Court will grant Kaiser's motion for default judgment in part and deny it in part. Kaiser has established ACCO's liability on her retaliation claim, though she has not established ACCO's liability on her sexual harassment claim. Kaiser has demonstrated her entitlement to damages to a large extent. However, Kaiser has not demonstrated the amount of prejudgment interest she is owed, and as such, the Court cannot order entry of judgment. The Court will order supplemental briefing on the issue of prejudgment interest. Failure to

submit such supplemental briefing by the Court's deadline will result in the Court awarding damages without prejudgment interest.

## 2. LEGAL STANDARD

Upon entry of default, "the well-pleaded allegations of a complaint relating to liability are taken as true." *VLM Food Trading Int'l., Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). "Accepting those facts as true, a court must determine whether those facts establish that the plaintiff is entitled to the relief [she] seeks." *Cree, Inc. v. BHP Energy Mex. S. de R.L. de C.V.*, 335 F. Supp. 3d 1105, 1111 (E.D. Wis. 2018) (citing *VLM Food*, 811 F.3d at 255). If they do, the Court may, in its discretion, grant default judgment to the movant. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (citing *Dundee Cement*, 722 F.2d at 1322).

Even if default judgment is granted, the movant nevertheless bears the responsibility to prove up her damages under Rule 55(b)(2) of the Federal Rules of Civil Procedure. Indeed, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," and the Court must conduct an inquiry "to ascertain the amount of damages with reasonable certainty." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004) (internal bracketing omitted)). Judgment by default may not be entered without a hearing on damages unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Id.* (quoting *Dundee Cement*, 722 F.2d at 1323).

### 3. FACTS[1]

Kaiser is a female adult resident of Wisconsin. ACCO is a Wisconsin corporation with a principal place of business in Milwaukee, Wisconsin. ACCO employed Kaiser as the Director of Nursing/Administrator from in or around April 2021 to December 2021. During that time, Kaiser reported to and took direction from Victor Ogbuehi ("Ogbuehi") regarding her day-to-day job duties and responsibilities.

During Kaiser's employment with ACCO, she was subjected to unwanted sexual comments, conduct, and advances by Ogbuehi. Specifically, in June 2021, Ogbuehi grabbed Kaiser's hands and rubbed them between his own hands. ECF No. 48 at 1. He subsequently placed his hand on the lower part of Kaiser's back, just above her buttocks. *Id.* at 1–2. In July 2021, Kaiser was alone in the file room when Ogbuehi approached her. *Id.* at 2. He pressed his body against hers in a sexual manner, specifically pressing against Kaiser's breasts. *Id.* Kaiser rejected Ogbuehi's advances and left the room. *Id.*

---

[1]The factual allegations in this Section are in part reproduced, with minor edits, from Kaiser's complaint. ECF No. 1. Citations to the complaint are omitted for brevity. For instances where Kaiser's brief and/or declaration in support of the motion for default judgment, ECF Nos. 48 and 49, clarify or add to the facts pleaded in the complaint, citations are included. *See Help At Home Inc. v. Med. Cap., L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("'A plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992))).

The Court has not located any case law "standing for the proposition that [ACCO] [is] not deemed to have admitted allegations made upon information and belief in the default context." *Nat'l Collegiate Athletic Ass'n v. Kizzang LLC*, 304 F. Supp. 3d 800, 807 n.5 (S.D. Ind. 2018). The Court thus omits any such qualifiers.

After Kaiser rebuffed his advances, Ogbuehi began treating her negatively. *Id*. He began blaming her for issues that were not her fault or responsibility and nitpicking her work. *Id*. As a result of the continuous negative treatment, Kaiser sent a written complaint to Ogbuehi regarding his sexual harassment and ensuing negative treatment. *Id*. A few days later, Ogbuehi called an in-person meeting with all office staff, during which he verbally attacked Kaiser for submitting her complaint and called the complaint "stupid." *Id*. Three days after that meeting, Kaiser was discharged.

Kaiser suffered emotional pain, suffering, inconvenience, and mental anguish as a result of ACCO's actions. Specifically, she experienced high anxiety and stress along with loss of sleep, loss of appetite, problems interacting with others, feelings of helplessness, loss of interest in hobbies and activities she used to enjoy, irritability, and other similar symptoms. *Id*. at 2–3. She experiences distrust of others, especially men in positions of authority, when she previously never had such thoughts. *Id*. at 3. Kaiser sought medical assistance for the mental and emotional distress from her primary care physician, as well as one-on-one counseling from a trained therapist. *Id*.

**4.     ANALYSIS**

**4.1     Jurisdiction**

"Before the court can consider entering judgment, . . . it must be satisfied that subject matter jurisdiction exists over this lawsuit." *Abele v. Abele*, No. 21-CV-370-WMC, 2021 WL 3190391, at *1 (W.D. Wis. July 28, 2021) (citing *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit.")). Subject-matter jurisdiction exists in this case. Kaiser sues under

Title VII and therefore invokes federal question jurisdiction. 28 U.S.C. § 1331.

The Court is also satisfied that it has personal jurisdiction over ACCO. *See e360 Insight,* 500 F.3d at 598 (7th Cir. 2007) ("Default judgments rendered without personal jurisdiction are void . . . .") (collecting cases). A process server served ACCO in Wisconsin. ECF No. 3. ACCO is registered in Wisconsin[2], has its principal place of business in Milwaukee, Wisconsin, and the conduct alleged in this suit took place in Wisconsin. Accordingly, the Court may exercise personal jurisdiction over ACCO. *See Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010); *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

### 4.2 Kaiser's Entitlement to Relief

As noted, the Court takes the above factual allegations set forth in the complaint relating to liability as true. *VLM Food*, 811 F.3d at 255. However, the Court still must determine whether those facts establish that Kaiser is entitled to relief. *Cree*, 335 F. Supp. 3d at 1111. For the reasons explained below, the Court determines that Kaiser is entitled to relief on her Title VII retaliation claim, but not on her sexual harassment claim.

Two initial matters merit mentioning. First, the Court has already ruled that ACCO is an employer within the meaning of Title VII and is thus subject to suit under the same. ECF No. 33 at 19. Second, Kaiser did not plead that the administrative prerequisites to suit were met—namely, Kaiser did not attach copies of her charge of discrimination and retaliation

---

[2] *See ACCO Management Company, LLC*, WIS. DEP'T OF FIN. INST., *available at* https://apps.dfi.wi.gov/apps/corpSearch/Details.aspx?entityID=A052474&hash=9 24885477&searchFunctionID=517e6fd5-e0f0-4058-8ef8- e0362dbb3e10&type=Simple&q=ACCO [https://perma.cc/67X4-9KKV] (last visited Feb. 25, 2026).

with the Equal Employment Opportunity Commission ("EEOC") or her EEOC right-to-sue letter. However, the Supreme Court has held that this obligation is a procedural one, rather than a jurisdictional requirement. *Fort Bend County v. Davis*, 587 U.S. 541, 550–52 (2019); *see also Sagaitis v. W. Bend Ins. Co.*, 790 F. Supp. 3d 744, 749 (W.D. Wis. 2025) (categorizing the failure to receive an EEOC right-to-sue letter as an affirmative defense that a Title VII plaintiff is not required to plead around (citing *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007)). As such, it was ACCO's burden to raise Kaiser's failure to file a relevant charge as an affirmative defense. ACCO did not do so in its answer, ECF No. 9, so the defense is waived. *Castro v. Chi. Housing Auth.*, 360 F.3d 721, 735 (7th Cir. 2004) ("[I]f a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived." (citing *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000))). The Court may thus turn to the substance of Kaiser's claims.

### 4.2.1 Kaiser's Sexual Harassment Claim

Title VII prohibits discrimination in employment on the basis of a person's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Sexual harassment by co-workers and supervisors falls within the ambit of conduct proscribed by Title VII. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63–67 (1986).

To state a claim for sexual harassment under Title VII, a plaintiff must allege that "(1) [s]he was subjected to unwelcome sexual conduct, advances, or requests; (2) because of h[er] sex; (3) the acts were severe or pervasive enough to create a hostile work environment; and (4) there is a basis for employer liability." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010) (citing *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008)). The

environment must be both subjectively and objectively "hostile." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 807 (7th Cir. 2000). That is, "[t]he work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Here, it is clear that Kaiser was subject to unwelcome physical contact of a sexual nature and that she found the contact upsetting. Indeed, she describes feeling "extremely uncomfortable" and "disgusted." ECF No. 48 at 2. But Kaiser does not "put forward any evidence that these incidents interfered with her ability to do her job." *Anderson v. Street*, 104 F.4th 646, 652 (7th Cir. 2024). Moreover, feeling "uncomfortable" is not generally enough to find subjective hostility. *See Hostetler*, 218 F.3d at 808 ("There are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor."). What requires additional inquiry is whether there were acts severe or pervasive enough to constitute an *objectively* hostile work environment.

A hostile work environment is created by "conduct 'so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" *McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004) (quoting *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462–63 (7th Cir. 2002)). It is difficult to draw the line between actionable "harassing" versus "merely objectionable" conduct. *Id*. (collecting cases). The trier of fact must consider "the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's

work performance." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 941 (7th Cir. 2007) (citing *Hostetler*, 218 F.3d at 806–07).

Here, the Court is unprepared to find that Ogbuehi's objectionable actions rose to the level of creating a hostile work environment. It is true that, in certain cases, single or isolated instances of sexual harassment can create the basis for a hostile work environment. *See, e.g., Hostetler*, 218 F.3d at 808 ("We have repeatedly recognized that even one act of harassment will suffice if it is egregious." (collecting cases)); *Lapka*, 517 F.3d at 983 ("The sexual assault alone may have been sufficient to create an objectively hostile environment."); *Worth v. Tyer*, 276 F.3d 249, 268 (7th Cir. 2001) (finding allegation that a supervisor touched the plaintiff's "breast near the nipple for several seconds" was sufficient to constitute a hostile work environment). The relevant line is not whether the offensive behavior was verbal or physical, as "[p]hysical harassment lies along a continuum just as verbal harassment does." *Hostetler*, 218 F.3d at 808. Instead, the relevant inquiry is whether the acts are, on the one hand, "unwelcome and uncomfortable" but nonetheless "minor" or, on the other hand, "more intimate, intrusive forms of contact." *Id*. That said, a brief survey of relevant Seventh Circuit cases provides helpful context.[3]

In *Dockter v. Rudolf Wolff Futures, Inc.*, the Seventh Circuit found that several instances of sexual misconduct, including one in which the offender fondled the plaintiff's breast, could not be found to create a hostile work environment. 913 F.2d 456, 461 (7th Cir. 1990). In *Saxton v. American*

---

[3]There are some distinctions in the procedural postures of these cases not relevant here, as these cases merely stand for the proposition that, as a matter of law, certain fact sets can and cannot constitute sexual harassment. *See Cent. Soya Co. v. Voktas, Inc.*, 661 F.2d 78, 79 n.1 (7th Cir. 1981) (demonstrating that distinctions in procedural posture are not always relevant).

*Telephone & Telegraph Co.*, the Seventh Circuit similarly found that multiple instances of physical contact—including touching the plaintiff's upper thigh, kissing the plaintiff, and lurching at her—did not give rise to a claim of a hostile work environment. 10 F.3d 526, 528, 534 (7th Cir. 1993). In *Koelsch v. Beltone Electronics Corp.*, the court found no hostile work environment where the offender grabbed plaintiff's buttocks while alone in a sound-proofed room. 46 F.3d 705, 706–07 (7th Cir. 1995). In *Weiss v. Coca-Cola Bottling Co. of Chicago*, the offender allegedly "asked [the plaintiff] for dates, called her a 'dumb blond,' put his hand on her shoulder several times, placed 'I love you' signs in her work area and attempted to kiss her in a bar," and "may have twice attempted to kiss her in the office." 990 F.2d 333, 337 (7th Cir. 1993). Still the court found these incidents "relatively isolated" and thus unable to meet the standard for actionable sexual harassment. *Id.* Finally, in *Adusumilli v. City of Chicago*, the court found that "four isolated incidents in which a co-worker briefly touched [the plaintiff's] arm, fingers, or buttocks" could not give rise to a hostile work environment claim. 164 F.3d 353, 361 (7th Cir. 1998).

By contrast, the Seventh Circuit in *Hostetler* found a hostile work environment where the offender "insert[ed] his tongue into [the plaintiff's] mouth without invitation" and "nearly removed" plaintiff's brassiere. 218 F.3d at 807. Similarly, in *Worth*, the Seventh Circuit found a hostile work environment where the offender "stuck his hand down [plaintiff's] dress and placed it directly onto her breast . . . one inch away from her nipple and kept it there for several seconds." 276 F.3d at 257. In *Patton v. Keystone RV Co.*, the court found a hostile work environment where a manager slid his hand up plaintiff's shorts, reaching her underwear. 455 F.3d 812, 814 (7th Cir. 2006). And in *Kampmier*, the court found a hostile work environment

where the offender "hugged [plaintiff] fifty to sixty times, jumped in her lap ten times, [and] touched her buttocks thirty times." 472 F.3d at 941. Cases involving single instances of rape have given rise to hostile work environment claims. *See, e.g., Lapka*, 517 F.3d at 983–84. In sum, these cases indicate that behavior must be either severe in quality or pervasive in quantity in order to give rise to a hostile work environment.

Seventh Circuit precedent constrains the Court to find that Kaiser has not established such a hostile work environment claim. The relevant sexual contact between Kaiser and Ogbuehi involved Ogbuehi grabbing Kaiser's hands and putting his hands on her back and, at a separate time, pressing himself against Kaiser's body, making contact with her breasts. But the Seventh Circuit has found that isolated contact of this sort cannot constitute a hostile work environment. Indeed, *Koelsch* is highly analogous here. In that case, the plaintiff similarly alleged two instances of unwelcome physical contact. *Koelsch*, 46 F.3d at 706. During the first incident, the offender "removed his shoe [during a meeting] and rubbed his foot against [the plaintiff]'s leg," despite her demanding that he stop. *Id.* During the second incident, while in a sound-proofed room, the offender grabbed the plaintiff's buttocks. *Id.* at 706–07. The plaintiff voiced her displeasure and left the room. *Id.* at 707. The court found no hostile work environment, explaining that the "crude conduct [Plaintiff] alleges is simply not severe or pervasive enough to render hers a hostile work environment." *Id.* at 708.

Here, too, Kaiser alleges two instances of unwelcome contact, one more serious than the other. During the first, Ogbuehi grabbed her hands and rubbed them between his own. ECF No. 48 at 2. He then touched her back. *Id.* During the second interaction—set in a secluded physical space, as in *Koelsch*—Ogbuehi pressed himself against Kaiser, making contact with

her breasts. *Id*. The Court cannot depart from the reasoning in *Koelsch* that so clearly applies here. 46 F.3d at 708 ("Isolated and innocuous incidents do not support a finding of sexual harassment." (citing *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 440 (7th Cir. 1994))). The acts Kaiser alleges, though undoubtedly offensive, are "insufficiently abusive to be described as 'severe' when they occur in isolation." *Hostetler*, 218 F.3d at 808 (citations omitted).

Because the Court finds that there was no hostile work environment, it need not reach the issue of employer liability. Kaiser's motion for default judgment will be denied with respect to her Title VII sexual harassment claim. Relatedly, Kaiser's Title VII sexual harassment claim will be dismissed with prejudice for failure to state a claim.

### 4.2.2 Kaiser's Retaliation Claim

While Kaiser cannot succeed on her sexual harassment claim, it does not follow that she cannot succeed on her retaliation claim. Indeed, Kaiser states a quintessential case for unlawful retaliation.

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." 42 U.S.C. § 2000e–3(a). "To establish a prima facie case of retaliation under Title VII, [Kaiser] had to establish that '(1) she engaged in what our case law refers to as statutorily protected expression (i.e. reporting or otherwise opposing conduct prohibited by Title VII, such as sexual harassment), (2) she suffered an adverse, job-related action by her employer . . . and (3) there is a causal link between her opposition to unlawful discrimination and [the adverse action]." *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 889–90 (7th Cir. 2001)

(quoting *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997) (internal quotation marks omitted)).

To the extent Kaiser's retaliation claim rests on Ogbuehi "blaming her for issues that were not her fault or responsibility" and "nitpicking her work," ECF No. 48 at 2, default judgment is improper, "because that so-called mistreatment did not amount to a 'materially adverse' action that can support a retaliation claim." *Allen v. Am. Signature, Inc.*, 272 F. App'x 507, 511 (7th Cir. 2008) (citations omitted); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780–81 (7th Cir. 2007).

However, to the extent her retaliation claim rests upon her termination, default judgment is proper and will be granted. First, Kaiser engaged in a statutorily protected activity. It does not matter whether the alleged discriminatory conduct reported—in this case Ogbuehi's behavior—"was in fact a violation of the statute," as long as Kaiser's actions were "based on a good-faith and reasonable belief" that she was "opposing unlawful conduct." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011). Here, Kaiser wrote a complaint to Ogbuehi opposing his offensive sexual conduct and subsequent mistreatment of her. ECF No. 48 at 2. Her belief that Ogbuehi's behavior violated Title VII was reasonable and in good faith—even if the behavior ultimately did not amount to a Title VII violation, there is a colorable argument that it was unlawful, as evidenced by the Court's discussion *supra* Section 4.2.1. She directed the complaint to him in lieu of a human resources department, because ACCO did not have a human resources department, and most traditional human resources functions were performed by Ogbuehi's romantic partner. *Id.*

Reporting sexual harassment is the archetype of a statutorily protected activity. *See, e.g.*, *Alley v. Penguin Random House*, 62 F.4th 358, 362 (7th Cir. 2023) ("Sexual harassment is indisputably an unlawful employment practice and thus, reporting allegations is a recognized protected activity under Title VII." (citing *Magyar v. Saint Joseph Reg'l Med. Ctr.*, 544 F.3d 766, 770–72 (7th Cir. 2008))).

Second, Kaiser clearly suffered an adverse employment action when her employment was terminated on December 27, 2021. *Barker v. YMCA of Racine*, 18 F. App'x 394, 398 (7th Cir. 2001) ("Adverse employment actions include termination . . . ." (citing *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001))).

Finally, there is sufficient evidence to infer a causal link between the reporting and Kaiser's termination. Relevant evidence of a causal link may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019) (quoting *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). Here, Kaiser sent her complaint to Ogbuehi on December 21, 2021. ECF No. 48 at 2. On December 24, 2021, Ogbuehi called an officewide meeting during which he berated Kaiser for submitting her sexual harassment complaint. *Id*. On December 27, 2021, Kaiser's employment was terminated. *Id*. "[R]easonable, non-suspicious explanations for the timing" of the defendant's conduct can overcome the inferences of retaliation flowing from proximity in time. *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018) (quoting *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th

Cir. 2017)). But here, no competing explanations exist. As such, the facts Kaiser alleges entitle her to relief.

### 4.3 Kaiser's Damages

Having determined that Kaiser has established her entitlement to relief on her retaliation claim, the Court next turns to whether Kaiser has adequately proven up her damages. For the reasons explained below, the Court determines that she has not yet done so. Kaiser seeks back pay in the amount of $19,518.30 plus prejudgment interest, compensatory damages in the amount of $50,000.00 for emotional distress, punitive damages in an unspecified amount, and attorney's fees and costs totaling $17,133.25, in addition to injunctive relief. ECF No. 48 at 7–9. The Court takes up each request in turn.

#### 4.3.1 Back Pay

Title VII allows for an award of back pay. 42 U.S.C. § 2000e-5(e)(3)(B). "Back pay is 'the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by defendant.'" *Gracia v. Sigmatron Int'l, Inc.*, 130 F. Supp. 3d 1249, 1258 (N.D. Ill. 2015) (quoting *Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc.*, 755 F.2d 599, 606 (7th Cir. 1985)), *aff'd*, 842 F.3d 1010 (7th Cir. 2016). Under Title VII, once liability is established, back pay is "presum[ed]" and "must be awarded unless 'special factors' are shown; such special factors 'usually include only circumstances where state legislation is in conflict with Title VII.'" *Id.* at 1256 (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003) and *E.E.O.C. v. Gurnee Inn Corp.*, 914 F.2d 815, 817–18 (7th Cir. 1990)); *Horn*, 755 F.2d at 606 (quoting *Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 451 (7th Cir. 1976) and citing *Le Beau v. Libbey-Owens-Ford Co.*, 727 F.2d 141, 149–50 (7th Cir. 1984)). The Court is unaware of any such "special factors" in

this case or with Wisconsin legislation generally. *See Horn*, 755 F.2d at 606; *E.E.O.C. v. Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828, 835 (E.D. Wis. 1994).

Calculating back pay is "not an exact science" and rests on "'a process of conjectures' that are necessarily 'imprecise.'" *Gracia*, 130 F. Supp. 3d at 1258 (quoting *Thompson v. Altheimer & Gray*, No. 96 C 4319, 2001 WL 1618717, at *2 (N.D. Ill. Dec. 18, 2001)). Here, Kaiser requests an award of back pay of $361.45 per work day for each of the 54 business days she was unemployed, based upon her $90,000 salary from ACCO, for a total of $19,518.30. ECF No. 48 at 8–9.

"If the victim of discrimination comes forward with evidence of the monetary harm that flowed from the employer's unlawful conduct, it is the employer's burden to prove that the victim failed to mitigate her damages or that the requested damages are otherwise excessive." *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580–81 (7th Cir. 1997) (collecting cases). It is, therefore, ACCO's burden to prove lack of mitigation as an affirmative defense. *Id*. Here, beyond a conclusory assertion in its answer, ECF No. 9 at 7, ACCO has offered no facts tending to support the conclusion that Kaiser failed to mitigate her damages.

At the default judgment stage, a plaintiff's statements in an affidavit as to what she would have made during the pertinent period are sufficient to prove up damages, particularly since a Title VII prevailing party "is presumptively entitled to full relief." *See Smith v. Casilo Consulting, Inc.*, No. 1:21-CV-253-HAB, 2022 WL 4545939, at *3–4 (N.D. Ind. Sept. 29, 2022) (calculating back pay using the plaintiff's proffered figure as to lost wages from sworn affidavit, while taking into account sworn mitigation assertions) (collecting cases), *vacated on other grounds*, No. 1:21-CV-253-

HAB, 2023 WL 2914261 (N.D. Ind. Apr. 12, 2023). Courts analyzing similar evidence have found it sufficient without a hearing, and so does the Court. *See, e.g., Emani Bethel v. Royal Leaf NY LLC d/b/a Statis Cannabis Dispensary*, No. 24-CV-9073 (DLC) (KHP), 2025 WL 3216640, at \*8 (S.D.N.Y. Oct. 9, 2025), *report and recommendation adopted sub nom. Bethel v. Royal Leaf NY LLC*, No. 24CV9073 (DLC), 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025). Therefore, the Court will award Kaiser $19,518.30 for back pay under Title VII.

### 4.3.2 Pre-Judgment Interest

Kaiser requests that the Court award her pre-judgment interest compounded on her back pay award. ECF No. 1 at 3; ECF No. 48 at 8. "There is no doubt that 'Title VII authorizes prejudgment interest as part of the backpay remedy in suits against private employers.'" *Gracia*, 130 F. Supp. 3d at 1263 (quoting *Loeffler v. Frank*, 486 U.S. 549, 557 (1988) and *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 745 (7th Cir. 2003)). However, Kaiser does not provide a proposed figure, and this figure is not readily discernable from the filings.

The Court will require the parties to confer and submit a supplemental memorandum detailing the proper rate of prejudgment interest and a recommended calculation of the amount of prejudgment interest that should be awarded in this case. Kaiser shall make a good faith effort to involve ACCO in the drafting of this memorandum and certify as much to the Court; if ACCO does not participate, Kaiser may submit the memorandum unilaterally. This supplemental memorandum shall be filed within **thirty (30) days** of the date of this Order.

### 4.3.3 Compensatory Damages

The Court next addresses whether Kaiser can recover emotional distress damages and whether she has adequately proven up her request

for $50,000.00 in emotional distress damages. As an initial matter, it is worth noting that a compensatory damage award "for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages" is limited to $50,000 for employers with 14 to 101 employees. 42 U.S.C. § 1981a(b)(3); *see also* 42 U.S.C. § 2000e-5(e)(3)(B) (noting that "relief authorized by section 1981a" is authorized in addition to back pay).[4]

Kaiser seeks the full $50,000. ECF No. 48 at 9. She relies on her affidavits. *Id.* (citing ECF No. 44 at 2); ECF Nos. 44, 49. The affidavits state that after she complained to Ogbuehi about the harassment, he called an office-wide, in-person meeting, during which he verbally attacked her and called her complaint "stupid." ECF No. 48 at 2 (citing ECF No. 49 at 6). Thereafter, she was fired. *Id*. (citing same). Following this, Kaiser reported experiencing "high anxiety and stress following [her] termination along with loss of sleep, loss of appetite, problems interacting with others, feelings of helplessness, loss of interest in hobbies and activities [she] used to enjoy, irritability, and other similar symptoms." ECF No. 44 at 1–2. She now finds herself questioning the motives of others, especially men in positions of authority when, before, she never had such thoughts. *Id.* at 2. She "sought medical assistance for the mental and emotional distress from [her] primary care physician as well as obtaining one-on-one counseling

---

[4]In her complaint, Kaiser alleges that ACCO had at least 15 employees during the relevant period. ECF No. 1 at 2. The Court confirmed that at least 15 individuals were employees in its Order on ACCO's motion for summary judgment. ECF No. 33 at 19.

from a trained therapist to help [her] cope with the discrimination, harassment, and retaliation." *Id*.

In determining what the proper compensatory damage award is in this case, the Court has considered awards in other Title VII cases with comparable types of emotional injuries, both from within and outside this district and circuit. *See E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995) (holding that a Title VII compensatory damages award will be reviewed by (1) whether the award is "monstrously excessive"; (2) whether there is a "rational connection between the award and the evidence"; and (3) "whether the award is roughly comparable to awards made in similar cases" (citing *Littlefield v. McGuffey*, 954 F.2d 1337, 1348 (7th Cir. 1992) and *Fleming v. County of Kane*, 898 F.2d 553, 561 (7th Cir. 1990)). The Court places its review of relevant cases in a footnote for ease of reading.[5]

---

[5]*See Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 72, 77–78 (1st Cir. 2001) (affirming district court's award of $25,000 for pain and suffering arising from the plaintiff's hostile work environment and retaliation claims, where the plaintiff experienced six months of a "depressive state" arising from the wrongful discharge); *Setty v. Synergy Fitness*, No. 17CV6504NGGSMG, 2019 WL 1292431, at *4–5 (E.D.N.Y. Mar. 21, 2019) (awarding plaintiffs $35,000 and $25,000, respectively, in compensatory damages where plaintiffs did not present evidence from anyone else to corroborate their emotional distress claims and did not allege that their symptoms were ongoing); *Sizer v. Rossie Contractors*, No. 98 6967, 2002 WL 1559694, *6–8 (N.D. Ill. July 16, 2002) (granting remittitur from $125,000 to $25,000 for damages related to claim of intentional infliction of emotional distress associated with discriminatory termination, which left defendant "totally disillusioned," "devastated," "depressed," "in despair," and "scared to go out and get a job hooked to a union"); *Fleming v. County of Kane*, 898 F.2d 553, 561–62 (7th Cir. 1990) (reduction of damages from $80,000 to $40,000 was proper where plaintiff was discharged for whistle-blowing and consequently suffered embarrassment, humiliation, depression, serious headaches, and sleeplessness); *Enright v. Ill. State Police*, No. 97 C 8688, 2000 WL 420857 (N.D. Ill. Apr.18, 2000) (emotional distress damages award reduced from $200,000 to $50,000 when

One additional matter merits attention—namely the fact that the evidence regarding Kaiser's emotional damages comes exclusively from her affidavit and complaint. In the default judgment context, this Court has previously accepted an affidavit as sufficient evidence to ascertain the amount of emotional distress damages in a Title VII case. *See E.E.O.C. v. HCS Med. Staffing, Inc.*, No. 11-CV-402-JPS, 2012 WL 529593, at *5 (E.D. Wis. Feb. 17, 2012) (holding that a plaintiff's affidavit testimony may suffice as the sole evidence of emotional distress if she can explain her injury in "reasonable detail" or if the facts underlying the case are so inherently degrading that a person would suffer emotional distress from the defendant's actions (citing *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003))). The Court found that the circumstances leading up to the plaintiff's discriminatory termination and notice of termination were "inherently humiliating" such that the plaintiff's "testimony by way of declaration [wa]s sufficient to support an emotional distress award." *Id.*

In another default judgment case, the Northern District of Illinois found an affidavit sufficient to ascertain emotional distress damages without a hearing where, again, the plaintiff "explain[ed] the circumstances of h[er] injury in reasonable detail" and, although she used conclusory statements, the "facts underlying the case [we]re so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Bartuch v. DNI Recovery*, No. 10 C 4869, 2011 WL 689583, at *1 (N.D. Ill. Feb. 16, 2011) (quoting *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004)). There, the plaintiff

---

discrimination caused the plaintiff to develop an ulcer and become angry and upset, and her doctor diagnosed plaintiff as suffering from stress-induced migraines).

averred that "because of the defendant's behavior, she ha[d] suffered embarrassment and emotional distress[] and was constantly stressed and worried that her wages were going to be garnished." *Id.* She also attested that she "felt in a very tough position" and was "very upset." *Id.* The court found these statements sufficient when coupled with the allegations of the case, and it then looked to other cases to ascertain the appropriate amount of damages. *Id.*

The same is true here, and the Court will follow the same tack. The circumstances of Kaiser's termination, specifically that she was fired just days after she complained about sexual harassment and was publicly berated in front of the entire company, ECF No. 48 at 7, are inherently degrading. Indeed, Ogbuehi used the specially called meeting as an opportunity to publicly call Kaiser's complaint "stupid." *Id.* The Court finds these facts sufficiently concrete and inherently degrading such that it can accept even Kaiser's more conclusory statements as to her emotional distress. Even so, Kaiser proffers several detailed statements, including her newfound distrust of others—in particular men in positions of authority— and her need to go to therapy. *Id.* at 3. Thus, the Court finds the affidavit sufficiently detailed, together with the underlying facts of the case, such that it can determine Kaiser's award of emotional damages therefrom.

Ultimately, based on the Court's review of the aforementioned authorities, the complaint, and Kaiser's sworn affidavit, the Court finds that a compensatory damages award of $35,000 is appropriate. This figure reflects the following: (1) the fact that Kaiser needed to seek medical treatment for her symptoms, *Setty*, 2019 WL 1292431, at *4–5 (citations omitted); (2) the fact that the record indicates no other factors contributing to Kaiser's symptoms, *Sizer*, 2002 WL 1559694, at *7; (3) the absence of

corroborating testimony, *Fleming*, 898 F.2d at 562; and (4) the severity of Kaiser's symptoms, including her "high anxiety and stress," "loss of sleep, loss of appetite, problems interacting with others, feelings of helplessness, loss of interest in hobbies and activities . . . , [and] irritability," ECF No. 44 at 1–2. *Reiter v. Metro. Transp. Auth. of New York*, No. 01 CIV. 2762 (JGK), 2003 WL 22271223, at *7–8 (S.D.N.Y. Sept. 30, 2003).

### 4.3.4    Punitive Damages

Kaiser also requests punitive damages. ECF No. 1 at 3–4; ECF No. 48 at 7–8. She offers no substantive argument in support of this request, nor does she provide an indication of the amount of punitive damages sought. But theoretically, because the Court has ordered $35,000 in compensatory damages, it could order up to $15,000 in punitive damages. 42 U.S.C. § 1981a(b)(3) (providing for $50,000 in combined compensatory and punitive damages for employers of ACCO's size). As above, the Court is prepared to assess punitive damages using the written record only. *See Williams v. Dearborn Motors 1, LLC*, No. 17-12724, 2020 WL 1242821, at *5 (E.D. Mich. Mar. 16, 2020) ("Having found that Plaintiff Howard is entitled to a partial default judgment, the Court moves to a determination of the amount of damages. Howard requests . . . punitive damages . . . . To support his request, he has provided both a declaration made by him under penalty of perjury along with the EEOC files in this case.").

A plaintiff in a Title VII action may recover punitive damages if she shows that the employer engaged in intentional discrimination and engaged in that intentional discrimination "with malice or with reckless indifference to the federally protected rights" of the victim of discrimination. 42 U.S.C. § 1981a(b)(1). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in

violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). Malice has been described as "evil motive or intent," and reckless indifference has been described as "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.* at 536 (quoting *Smith v. Wade*, 461 U.S. 30, 37 n.6 (1983) and citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Pointing to evidence of an employer's egregious behavior would provide one means of satisfying the plaintiff's burden to 'demonstrate' that the employer acted with the requisite 'malice or . . . reckless indifference,'" but "an employer's conduct need not be independently 'egregious' to satisfy § 1981a's requirements for punitive damages award." *Id.* at 539 (quoting 42 U.S.C. § 1981a(b)(1); brackets omitted); *id.* at 546.

The Court has already found that the facts alleged in Kaiser's complaint show that ACCO retaliated against Kaiser for her opposition to sexual harassment when it terminated her employment. That ACCO did so with malice and reckless indifference to the federally protected rights of Kaiser becomes clear when one considers that just before ACCO terminated her employment, Ogbuehi called an office-wide meeting during which he publicly humiliated Kaiser for coming forward with a sexual harassment complaint. This is an egregious act that supports an inference of evil motive, even without Kaiser alleging or proving that ACCO or Ogbuehi knew they were violating federal law. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 101 (2d Cir. 2001) ("As an alternative to proving that the defendant knew it was acting in violation of federal law, '[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'" (quoting *Kolstad*, 527 U.S. at 538)).

Given the "degree of reprehensibility of the defendant's misconduct," *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 838 (7th Cir. 2013) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)), the Court finds that some amount of punitive damages is appropriate here. The specific amount can be determined using the methodology provided by the Supreme Court in *BMW of North America, Inc. v. Gore*, in which the Court identified several factors for courts to consider in assessing the reasonableness of punitive damages, including: (1) the degree of reprehensibility of the defendant's conduct; (2) the difference between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties imposed in comparable cases. 517 U.S. 559, 575 (1996) (collecting cases). With that framework in mind, the Court will look to punitive damages awards in similar cases.

In *Spady v. H&K Partners, LLC*, a jury awarded $10,000 in punitive damages where the plaintiff was wrongfully terminated by the defendant as retaliation for his harassment complaint against the defendant. No. 07-C-972, 2008 WL 4831714, at *1 (E.D. Wis. Nov. 3, 2008). In *Herbert-Pereski v. Pam's Wings With Things, LLC*, the court found $10,000 to be an appropriate punitive damage award in a sexual harassment and retaliation case. No. 5:23-CV-04057-HLT-GEB, 2024 WL 5694547, at *7 (D. Kan. Dec. 18, 2024). In *Miller v. Metro One Loss Prevention Services Group*, the court awarded $20,000 in punitive damages to a plaintiff who had suffered harassment and retaliation. No. 1:23-CV-1729, 2024 WL 3871758, at *7 (M.D. Pa. Aug. 19, 2024). In *Whitehead v. Florida Delivery Services, Inc.*, the court granted a $10,000 punitive damages award where the plaintiff had claimed sex and pregnancy discrimination as well as retaliation. No. 8:22-CV-1482-WFJ-

CPT, 2024 WL 5079936, at *5 (M.D. Fla. Nov. 26, 2024), *report and recommendation adopted*, No. 8:22-CV-1482-WFJ-CPT, 2024 WL 5077986 (M.D. Fla. Dec. 11, 2024). In *Bruns v. Tucson Used Auto Sales*, the court ordered that the plaintiff receive $15,000 in punitive damages where the plaintiff experienced sex discrimination and retaliation. No. CV-22-00465-TUC-JGZ, 2024 WL 3811678, at *5 (D. Ariz. Aug. 14, 2024). In *Quintero v. Angels of the World, Inc.*, the court awarded the plaintiff $15,000 in punitive damages based on her sexual harassment claim. No. 19-CV-6126 (DG), 2021 WL 4464123, at *15 (E.D.N.Y. Sept. 10, 2021), *report and recommendation adopted sub nom. Quintero v. Stoupas*, No. 19CV06126DGRLM, 2021 WL 4463488 (E.D.N.Y. Sept. 29, 2021). Finally, in *Rivera v. W. Haven Smile Dental, LLC*, the court awarded a plaintiff $20,000 in punitive damages based on her experience of retaliation for reporting sexual harassment. No. 3:16-CV-252 (VAB), 2019 WL 13295527, at *10 (D. Conn. May 30, 2019).[6] In this context, and mindful of the fact that Kaiser has only succeeded on her retaliation claim, a punitive damages award of $10,000 is appropriate.

---

[6]Other apt cases include *Kooi v. ADS Foods LLC*, No. CV-19-05720-PHX-DLR, 2020 WL 4530463, at *4 (D. Ariz. Aug. 6, 2020) (awarding plaintiff $15,000 in punitive damages where "Plaintiff informed her area manager of her supervisor's harassing behavior. Rather than remedy the harassment, Defendant brushed aside Plaintiff's concerns and terminated her in retaliation."); *U.S. Equal Emp. Opportunity Comm'n v. Pac. Fun Enters. LLC*, No. CV 17-00482 ACK-RT, 2020 WL 406681, at *12 (D. Haw. Jan. 7, 2020), *report and recommendation adopted*, No. CV 17-00482 ACK-RT, 2020 WL 406372 (D. Haw. Jan. 23, 2020) (awarding plaintiffs $25,000 in punitive damages for sexual harassment, hostile work environment, and retaliation); *Napold v. Parvatishver, LLC*, No. CV 17-584, 2018 WL 1089680, at *6 (W.D. Pa. Feb. 28, 2018) (awarding $10,000 in punitive damages based on sexual discrimination and retaliation).

### 4.3.5 Attorney's Fees and Costs

Kaiser also seeks attorney's fees of $16,627.50. ECF No. 48 at 8–9; ECF No. 45 at 2. She further seeks costs in the amount of $505.75, for a total of $17,133.25. ECF No. 45 at 2.

The starting point in the determination of a reasonable fee is a calculation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The figure that results from this computation is termed the "lodestar." *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991) (collecting cases). The lodestar figure is presumed to be a reasonable fee award. *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1109 (7th Cir. 1990) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) and *Hensley*, 461 U.S. at 433). Thereafter, the Court may adjust the figure to "reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (citing *Schlacher v. Law Offices of Philip J. Rotche & Assocs.*, 574 F.3d 852, 856–57 (7th Cir. 2009)); *see also Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (identifying the twelve factors courts should consider in determining attorney fees (citing *Hensley*, 461 U.S. at 441)). "The party seeking fees bears the burden of proving the reasonableness of the hourly rate charged and the reasonableness of the hours worked." *Hines v. JBR Trucking LLC*, No. 2:18-CV-2159, 2020 WL 1429907, at *5 (C.D. Ill. Mar. 24, 2020) (citing *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999)).

Here, Kaiser's request for attorney's fees and costs is supported by affidavits of her attorney and billing records from the attorney's law firm. ECF No. 45, 46. The affidavit sets forth the attorney's hourly rates, as well

as the attorney's background and experience. Kaiser's attorney has sought rates between $300 and $350 per hour during the representation of Kaiser.[7] ECF No. 45 at 1.

These rates are in line with rates that have recently been approved in this District. *See, e.g., Stephani v. JC Sols.*, No. 21-C-458, 2022 WL 4017413, at *1 (E.D. Wis. Sept. 2, 2022) (approving attorney's fees where the rates were $450 per hour and $325 per hour for each attorney); *McCabe v. Tire Web, LLC*, No. 23-CV-459-PP, 2024 WL 5238261, at *3 (E.D. Wis. Dec. 26, 2024) (" . . . $750 an hour is a reasonable rate . . . "); *Currier v. Lawgix Laws., LLC*, No. 21-CV-419-PP, 2022 WL 11826245, at *2 (E.D. Wis. Oct. 20, 2022) (permitting recovery on rates between $425 per hour and $550 per hour); *Ellis v. Whitewater Auto, Inc.*, 662 F. Supp. 3d 971, 977–78 (E.D. Wis. 2023) (finding a rate of $400 an hour reasonable). The Court finds the requested rates reasonable.

The number of hours worked is also reasonable. Kaiser's attorney has pursued this litigation diligently in the face of recalcitrant defendants. The case itself involved complicated legal questions regarding what constitutes sexual harassment and retaliation, and while Plaintiff ultimately only succeeded on one of her claims, her claims were not frivolous.

---

[7] A small amount of time was billed by "Alicia McDonald" and "Maria Gervasio." ECF No. 46. These individuals appear to be either law clerks, paralegals, legal assistants, or other legal support staff. Insofar as the work they did appears to be legal rather than clerical or administrative in nature, the Court is prepared to compensate Kaiser for this as well. *See E.E.O.C. v. Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828, 838 (E.D. Wis. 1994) ("The 'reasonable attorney's fee' provided for by statute should compensate for the work of paralegals as well as attorneys." (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1988) and *Cameo Convalescent Ctr., Inc. v. Senn*, 738 F.2d 836, 846 (7th Cir. 1984)); *Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 667 (N.D. Ind. 2005) ("These are all tasks that are administrative and clerical in nature and thus, are not reimbursable fees.").

*Gastineau*, 592 F.3d at 748 (citing *Schlacher*, 574 F.3d at 856–57). The litigation also substantially advances the public's interest in justice for those who suffer from retaliation, especially at the hands of an unresponsive defendant. *Id*.

Thus, taking into account Kaiser's success in this litigation and the experience of her attorney, the Court finds the request for attorney's fees and costs to be reasonable and appropriate for Kaiser's attorney's work on this case. The Court will grant Kaiser's attorney's fee request in the amount of $16,627.50. Kaiser will also be granted costs in the amount of $502.75.[8]

### 4.3.6   Injunctive Relief

Kaiser requests a "permanent injunction against ACCO and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of sex and opposition to conduct made unlawful by Title VII." ECF No. 1 at 3; ECF No. 48 at 7. Further, she requests that the Court "[o]rder ACCO to institute and carry out policies, practices and programs which provide equal employment opportunities for all sexes and all persons who oppose conduct made unlawful by Title VII, and which eradicate the effects of its past and present unlawful employment practices." ECF No. 1 at 3; ECF No. 48 at 7–8.

Title VII provides for injunctions to "bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (citing *Louisiana v. United States*, 380 U.S. 145, 154 (1965)). The statute provides that "[i]f the court finds that the respondent has intentionally engaged in or is

---

[8] Costs include the $402 filing fee. *See* Nov. 17, 2023 docket entry text. Costs also include $75.00 in "delivery services / messengers" costs and $25.75 in "copying" costs. ECF No. 46 at 6.

intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate." 42 U.S.C. § 2000e–5(g). In such cases, the district court has broad discretion to tailor equitable remedies to provide full relief. *Miles v. Indiana*, 387 F.3d 591, 602 (7th Cir. 2004) (citing *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863 (7th Cir. 2001)); *Bruso*, 239 F.3d at 863–65.

Here, however, injunctive relief would be inappropriate, as Kaiser no longer works at ACCO and has no intention of returning. *See, e.g., Olian v. Bd. of Educ. of City of Chicago*, 631 F. Supp. 2d 953, 967 (N.D. Ill. 2009) ("[I]njunctive relief is particularly inappropriate in this case, as Plaintiff no longer works for the Board and has no desire to return"); *Johnson v. Vill. of Sandoval, Ill.*, No. 07-CV-0191-MJR, 2008 WL 961563, at *4 (S.D. Ill. Apr. 8, 2008) ("Johnson alleges no ongoing threat to herself that would permit injunctive relief because she no longer works for the Village of Sandoval."); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (holding that prospective injunctive relief requires "real and immediate threat of future violations."). As such, the request for injunctive relief will be denied.

5.   **CONCLUSION**

For all the reasons set forth herein, Kaiser's motion for default judgment is granted in part and denied in part. However, the Court will not yet order entry of judgment. *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 590–91 (7th Cir. 1994) (noting that "where a court intends to award prejudgment interest, its judgment is not final . . . until the amount of interest is calculated"); *Student Loan Mktg. Ass'n v. Lipman*, 45 F.3d 173, 175 (7th Cir. 1995) (noting that a district court judgment imposing prejudgment interest without calculating the amount may be considered

final where "the uncalculated interest is free from dispute and is readily ascertainable from the record"). That being said, if no supplemental memorandum is filed within **thirty (30) days**, the Court will deny Plaintiff's motion as to an award of prejudgment interest and will order entry of judgment that does not include prejudgment interest.

Accordingly,

**IT IS ORDERED** that Plaintiff Amanda Kaiser's motion for default judgment, ECF No. 48, be and the same is hereby **GRANTED** with respect to her Title VII retaliation claim and **DENIED** with respect to her Title VII sexual harassment claim;

**IT IS FURTHER ORDERED** that Defendant ACCO Management Company, LLC is liable for Title VII retaliation in the amount of $81,648.55, representing $19,518.30 in back pay, $35,000 in compensatory damages for emotional distress, $10,000 in punitive damages, $16,627.50 in attorney's fees, and $502.75 in costs;

**IT IS FURTHER ORDERED** that Plaintiff Amanda Kaiser's Title VII sexual harassment claim be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff Amanda Kaiser's request for injunctive relief be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that to the extent that Plaintiff Amanda Kaiser seeks prejudgment interest, the Court **DEFERS** ruling pending further submissions; Plaintiff Amanda Kaiser shall submit a supplemental memorandum regarding prejudgment interest in accordance with the instructions above within **thirty (30) days** of this Order; failure to timely do so will result in the entry of a judgment without prejudgment interest included.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge